NOTICE

Decision filed 09/05/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0465

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* PHILLIP E. | ) Appeal from the |
| | ) Circuit Court of |
| (The People of the State of Illinois, | ) Randolph County. |
| | ) |
| Petitioner-Appellee, | ) |
| | ) |
| v. | ) No. 07-MH-192 |
| | ) |
| Phillip E., | ) Honorable |
| | ) William A. Schuwerk, Jr., |
| Respondent-Appellant). | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

Phillip E. appeals from the trial court's August 8, 2007, judgment concluding that he should remain subject to involuntary admission and "hospitalized in a Department of Human Services mental health or developmental center, which is the least restrictive environment currently appropriate and available." We reverse.

From the record, we note that Phillip E. was born in 1980 and has essentially been a part of various state programs since he was an infant. Phillip was born in a prison to an unwed inmate. He lived in a Texas prison for the first couple of years of his life. Thereafter, he had multiple home placements with no stable home environment. The behavioral problems began when he was about seven years of age. There were numerous foster home placements. Phillip made several attempts to run away from those placements. Beginning at about eight years of age, he was treated for attention deficit hyperactivity disorder (ADHD) and depression. By the age of 11, he was being treated with additional medication for severe mood swings. He never graduated from high school, and while he had a couple

1

of part-time jobs, his history does not appear to include any steady employment. Since 1999, Phillip has been in and out of various psychiatric hospital settings that apparently coincide with criminal charges. The admission at issue in this case was Phillip's seventh since 1999. Since the age of 18 (around 1998 or 1999), Phillip has been arrested numerous times in Franklin County for criminal damage to property, intimidation/disorderly conduct, and aggravated battery. He has been incarcerated for some of the charges in Franklin County.

On the most recent charges of criminal damage to property and resisting a peace officer, which form the genesis of this commitment, Phillip was found unfit to stand trial due to his mental status. He was thereafter admitted to Alton Mental Health Center. This admission occurred on September 24, 2002. His various aggressive behaviors in Alton Mental Health Center were of a nature that Phillip was no longer manageable there. He was ultimately transferred to Chester Mental Health Center after a March 31, 2003, altercation when he injured several Alton staff members.

He arrived at Chester Mental Health Center on April 1, 2003. He had been held at Chester Mental Health Center subject to involuntary admission since November 12, 2003. During his time at Chester Mental Health Center, there were several incidents requiring full restraint–some at his own request due to fears that he could cause injury to himself or to others. There were several incidents of aggressive behavior toward others and toward property. While he had improved on taking his prescribed medication, the record was full of incidents in which he would not take his medication.

The current petition to maintain Phillip on an involuntary commitment status was filed on August 2, 2007. The petition was accompanied by two certificates of examination–one conducted on July 13, 2007, by licensed clinical social worker Ellen Steibel and the other conducted on July 16, 2007, by psychiatrist P.S. Thakur, M.D. In addition to the two certificates, a lengthy 30-day treatment plan was also filed with the petition.

2

At the time this petition was filed, Phillip continued to suffer a few mood swings each day. He was listed as being paranoid and easily agitated. The record indicated that as a result of his agitation, Phillip had a history where he "slams the door, sometimes hits the wall or door, sometimes flips over his bed and desk, yells loudly in a threatening manner, [and] paces the floor." He was described as being loud and abusive to the staff. Dr. P.S. Thakur, the psychiatrist who filed the petition to extend Phillip's involuntary admission, diagnosed Phillip on Axis I with schizoaffective disorder, mixed-type bipolar; somatization disorder; and a history of prior ADHD treatment. On Axis II, Dr. Thakur was of the opinion that Phillip suffered from a borderline personality disorder, which manifested itself in constant attention-seeking behaviors for fear of being abandoned, in an inability to form stable relationships, significant impulsivity, marked reactive mood, inappropriate anger, and a display of temper tantrums. Dr. Thakur was of the opinion that Phillip had suffered from major psychiatric disorders since 1999. At the time that the petition was filed, Phillip was taking olanzapine for psychosis, oxcarbazepine for unstable mood, hydroxyzine for agitation, clonazepam for agitation and mood swings, and lamotrigine for mood swings.

The treatment plan indicated that Phillip "demonstrated some improvement behaviorally[] but continues to require treatment in a structured setting." Of note was the fact that the last time his behavior resulted in the need for full restraint was back on April 28, 2007.

As far as contact with family, significant others, and/or community, the social worker and psychiatrist noted in Phillip's treatment plan that since December 28, 2006, his mother had reentered his life. During that time frame, his mother visited and spoke with him by phone on a regular basis. However, the mother did not want Phillip to know what her telephone number was, and so all phone contact had to be initiated by Phillip's therapist.

Phillip was personally served with a copy of the notice of hearing by the Randolph

3

County sheriff's office on August 3, 2007. The record remains unclear regarding whether or not he was served with a copy of the petition as well. Because we are unclear regarding the service of the petition, we are unclear regarding whether or not his rights were provided to and/or explained to him. Assuming he was served with the petition, we note that on page four of the petition there are 11 items typed and labeled "Rights of Admittee."

The hearing was held on August 8, 2007. Only one witness was called in support of the petition. That witness was Cindy Stoll, a licensed clinical social worker employed at Chester Mental Health Center. She testified that she had met with Phillip the day before and that she had also reviewed his clinical file and interviewed members of his treatment team. She testified about aspects of the certificates filed with the petition. She testified that of importance was the fact that Phillip had shown improvement over the preceding three months and that his treatment team was recommending that Phillip be approved for a transfer. Even so, Cindy testified that Phillip remained mentally ill and was reasonably expected to inflict serious harm upon himself or others. Cindy testified that although Phillip had been speaking with his mother, it was not known whether his mother would be able and/or willing to care for him if he should be released. Cindy further testified that Phillip had a history of noncompliance with respect to prescribed medications (including a refusal on August 5, 2007, after the petition was filed) and that medication was critical in order to keep Phillip from harming himself or others. Cindy provided her opinion that Phillip met the criteria for involuntary admission to the Department of Human Services and that this was her professional recommendation.

Phillip was present at the hearing on the petition, and he testified in response to a few questions:

> "MR. WALKER [attorney for Phillip E.]: Could you please state your name for the record.

4

PHILLIP E.: Phillip [E.]

MR. WALKER: Okay, Mr. [E.] We're here today relative to a petition to keep you within the Department of Human Services. Do you understand that?

PHILLIP E.: Yes, sir.

MR. WALKER: Why do you feel you do not meet the requirements to be placed within the Department of Human Services?

PHILLIP E.: I want to become part of the Human Services.

MR. WALKER: That's all the questions I have, Your Honor."

The court ruled that Phillip remained subject to an involuntary admission, and it entered a written order that date.

Phillip E. appeals.

On appeal, he contends that the judgment must be reversed because the petition and supporting documents failed to comply with the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et seq.* (West 2006)), because the judgment is contrary to the manifest weight of the evidence before the court, and because the State did not establish by clear and convincing evidence that hospitalization was the least restrictive alternative treatment setting available.

Initially, we must note that the case is technically moot because the 180-day hospitalization, which began on August 8, 2007, has since expired. Generally speaking, courts should not address moot issues. *In re Mary Ann P.*, 202 Ill. 2d 393, 401, 781 N.E.2d 237, 242 (2002). Therefore, we cannot render Phillip E. any relief. However, we can review moot issues if the issues qualify for review under the public-interest exception to the mootness doctrine. *In re Mary Ann P.*, 202 Ill. 2d at 402, 781 N.E.2d at 242. The criteria for applying this exception are as follows: "(1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and

5

(3) the likelihood that the question will recur." *In re Mary Ann P.*, 202 Ill. 2d at 402, 781 N.E.2d at 242-43 (citing *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365, 710 N.E.2d 1226, 1227 (1999), and *Radazewski v. Cawley*, 159 Ill. 2d 372, 376, 639 N.E.2d 141, 142 (1994)).

We find that this case satisfies all three criteria. The statutory guidelines and requirements for a certain level of proof are not merely goals but are in place in order to provide the respondent with due process. After all, the outcome of this type of case serves to further restrict the respondent's ability to live his life. And so, if the ultimate decision results in continued hospitalization, it should be because after compliance with the requirements, hospitalization is found warranted under the unique circumstances of the case. We also believe that a closer examination of these issues would be helpful to the court system and to the parties. Furthermore, we find that these compliance and proof issues are likely to recur.

For these reasons, we turn to the issues raised.

Phillip contends that the two certificates attached to the petition were untimely. One certificate was dated July 15, 2007, while the other was dated July 16, 2007. Because the petition was filed on August 2, 2007, the certificates are outside of the 72-hour requirement of section 3-602 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3-602 (West 2006)). Section 3-813(b) of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3-813(b) (West 2006)), which addresses what is required when additional 180-day periods of hospitalization are sought, does not specify a time frame relative to certificates. The statute states as follows:

"Additional 180[-]day periods of treatment may be sought pursuant to the procedures set out in this Section for so long as the recipient continues to be subject to involuntary admission. *The provisions of this chapter which apply whenever an initial order is sought shall apply whenever an additional period of treatment is*

6

*sought*." (Emphasis added.) 405 ILCS 5/3-813(b) (West 2006).

Phillip argues that the applicable time frame relative to the initial order is one of the "provisions" which must apply to a subsequent 180-day request. While we understand the argument Phillip makes, this court has already addressed this argument and reached the conclusion that there is no applicable time frame for a subsequent commitment request because the patient has been hospitalized and under professional care for the entirety of the proceeding. See *In re Kevin S.*, 381 Ill. App. 3d 260, 264-65, 886 N.E.2d 508, 513-14 (2008).

Phillip also contends that there is no evidence that he was served with the petition within 12 hours of its filing. Section 3-609 of the Mental Health and Developmental Disabilities Code requires that the respondent be served with a copy of the petition for involuntary commitment within 12 hours of his or her admission to the facility. 405 ILCS 5/3-609 (West 2006). Our courts have held that an individual subject to involuntary admission should not be allowed to participate in the hearing only to later object on the basis of the procedural flaw that service of the document was untimely. *In re Luker*, 255 Ill. App. 3d 367, 370, 627 N.E.2d 1166, 1168 (1993). While we agree that the record is devoid of proof that Phillip was served with anything other than the notice of hearing, the negative is also not established, because Phillip did not testify that he did or did not receive the petition, and his appointed counsel did not raise a lack of service as a defense or as an argument. Furthermore, the facts allow for an inference that whether or not he received official notification, he was aware of the petition and the hearing. Phillip was represented by counsel at the hearing, and he also appeared in person on that date, going so far as to take the stand in defense of his position. Accordingly, to the extent that the State failed to comply with the service rule, we find that the issue has been waived.

Phillip next contends that there was insufficient evidence in support of the petition.

7

Section 3-602 of the Mental Health and Developmental Disabilities Act requires that a petition must be supported by a certificate executed by a physician, by a qualified examiner, or by a clinical psychologist. 405 ILCS 5/3-602 (West 2006). The certificate must contain opinions that the subject requires hospitalization, must indicate that the subject was examined within 72 hours before the petition was filed, and must also list the "clinical observations, other factual information relied upon in reaching a diagnosis, and a statement as to whether the respondent was advised of his rights." 405 ILCS 5/3-602 (West 2006). Furthermore, a respondent cannot be found subject to involuntary admission "unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined him testifies in person at the hearing." 405 ILCS 5/3-807 (West 2006). A respondent may be found subject to involuntary admission only if the findings of the court are established by clear and convincing evidence. 405 ILCS 5/3-808 (West 2006).

We have reviewed the record and the transcript of Phillip's hearing, and we agree with the argument he makes. Given the allegations or statements contained within both certificates and the 30-day treatment plan attached to the petition, it would appear that there was ample evidence warranting Phillip's ongoing hospitalization in some capacity. But virtually none of the evidence was admitted during the hearing. Cindy Stoll simply responded affirmatively that Phillip could not take care of his basic needs. She testified that Phillip remained mentally ill and was "reasonably expected to inflict serious harm upon himself or others." Cindy also answered yes to the leading question about whether Phillip met the criteria for involuntary admission. She provided no foundation for these opinions, but elsewhere in her brief testimony she did reference some of the material contained within the certificates and the treatment plan. None of the documents filed in support of the petition were admitted into evidence. The drafters of the documents were not called to testify about their knowledge, observations, and/or opinions.

8

Involuntary commitment affects very important liberty interests, and thus those seeking to keep an individual so confined must strictly comply with procedural safeguards included within the Mental Health and Developmental Disabilities Code. *In re Williams*, 305 Ill. App. 3d 506, 509, 712 N.E.2d 350, 352 (1999). These safeguards are included within the code to ensure that the mental health system does not become an oppressive tool rather than a means to serve the society in which we live. *In re Williams*, 305 Ill. App. 3d at 509, 712 N.E.2d at 352-53.

A showing of the need for involuntary mental health treatment must be based upon explicit medical testimony. *In re Cochran*, 139 Ill. App. 3d 198, 200, 487 N.E.2d 389, 391 (1985). "Both the facts upon which the medical opinion is based and the medical testimony upon which the decision *** is based must be established by clear and convincing evidence." *In re Cochran*, 139 Ill. App. 3d at 200, 487 N.E.2d at 391 (citing *People v. Sansone*, 18 Ill. App. 3d 315, 326, 309 N.E.2d 733, 741 (1974)). Clear and convincing evidence is that quantum of proof that leaves no reasonable doubt in the mind of the finder of fact regarding the veracity of the proposition in question. *In re John R.*, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003) (citing *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995)).

Proof of mental illness can be established by clear and convincing evidence by the testimony of just one expert if that expert indicates that his or her diagnosis stems from a history of direct observation of the respondent on several occasions. *In re Tuman*, 268 Ill. App. 3d 106, 111, 644 N.E.2d 56, 59 (1994); *In re Tyrone S.*, 339 Ill. App. 3d 495, 501, 791 N.E.2d 157, 162 (2003). When the State chooses to offer no additional testimony of persons involved with the respondent's case, "a court must carefully examine the facts which form the basis of the expert's testimony to determine whether the testimony, standing alone, is 'clear and convincing.' " *In re Tuman*, 268 Ill. App. 3d at 111, 644 N.E.2d at 59.

9

In this case, only the clinical social worker testified, and she indicated that she had only met with Phillip to talk with him the day prior to the hearing. She did not testify regarding any direct observation of Phillip, and she seemed to refer to reports prepared by others in reaching her opinions. While the underlying factual support of the expert's opinions need not be substantively admissible, there still must be adequate factual support for the opinions offered. *In re Tuman*, 268 Ill. App. 3d at 111, 644 N.E.2d at 59.

The State sought to establish alternatively either that Phillip E. was reasonably expected to inflict serious physical harm upon himself or upon another in the near future or that Phillip E. was unable to care for his own basic needs. The incredibly brief testimony offered falls short on both counts. No other evidence was introduced.

While Cindy Stoll testified about aspects of the certificates filed in support of Phillip's petition, we find that the testimony fell short of clear and convincing evidence. Cindy did not provide testimony about her personal experiences or observations relative to Phillip as impacting the question of the likelihood of his inflicting serious physical harm upon himself or others. See *In re Tyrone S.*, 339 Ill. App. 3d at 501, 791 N.E.2d at 162.

A respondent's mental illness must be of a type that prevents him from "caring for [his] basic physical needs by substantially impairing [his] thought process, perception of reality, emotional stability, judgment, behavior, or ability to cope with life's ordinary demands." *In re Ingersoll*, 188 Ill. App. 3d 364, 368, 544 N.E.2d 409, 412 (1989) (citing *People v. Lang*, 113 Ill. 2d 407, 498 N.E.2d 1105 (1986)). With respect to Phillip's ability to care for his own needs, the court must consider whether the respondent can obtain his own food, shelter, and medical care, whether the person has a place to live or family to assist him, whether he can function in society, and whether the respondent has an understanding of money and concern for it as a means of sustenance. *In re Tuman*, 268 Ill. App. 3d at 112, 644 N.E.2d at 60 (citing *In re Long*, 237 Ill. App. 3d 105, 110, 606 N.E.2d 1259, 1262-63

10

(1992)). The only matter relevant to Phillip's ability to care for his own needs related to his mother. Cindy Stoll testified that she did not know whether his mother would be willing to assist him. No other testimony or evidence was offered regarding Phillip's ability to care for his own needs.

We reiterate that the content of the attachments was strong and certainly would have gone a long way toward the clear and convincing proof needed to ensure that Phillip E.'s due process rights remained intact. The questions asked of Cindy Stoll were simply not of a type to provoke lengthy answers that could have provided the factual detail necessary. As indicated by the court in a footnote in *In re Presswood*, 51 Ill. App. 3d 104, 108 n.2, 366 N.E.2d 442, 446 n.2 (1977), "[w]e consider it the responsibility of the State's Attorney and the Department of Mental Health [(now the Department of Human Services)] to present their case with thoroughness and specificity so as to lessen the need for review."

Because the petition was not supported by necessary proof, we must reverse the court's August 8, 2007, judgment.

Phillip also argues that there was simply no proof that continued hospitalization was the least restrictive treatment setting alternative. While this issue is no longer as important in light of the reversal of the judgment, we still feel compelled to comment on it. Section 3-811 of the Mental Health and Developmental Disabilities Code mandates that "[t]he court shall order the least restrictive alternative for treatment which is appropriate." 405 ILCS 5/3-811 (West 2006).

From a review of Cindy Stoll's testimony, there was absolutely no proof that continued hospitalization in Chester Mental Health Center was the least restrictive alternative available to Phillip E. at that stage of his mental health treatment. Without such testimony or any other evidence, we have no idea on what the trial court based its decision.

While the evidence that could have been introduced might well have supported the

11

ongoing commitment ordered by the trial judge, there simply was no such evidence in this case. With no evidence on this point, the trial court's order violates Phillip's due process rights. The trial court's August 8, 2007, judgment is therefore reversible on this basis as well.

We want to clarify that we are not criticizing the examinations of Phillip E. that were conducted in this case in support of the petition. Both certificates and the treatment plan were quite thorough. Our criticism is centered upon the presentation made to the court and the court's reliance upon less than full proof.

For the foregoing reasons, the judgment of the circuit court of Randolph County is hereby reversed.

Reversed.

GOLDENHERSH and WEXSTTEN, JJ., concur.

NO. 5-07-0465

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

<table>
<tr><td><em>In re</em> PHILLIP E.</td><td>)</td><td>Appeal from the</td></tr>
<tr><td></td><td>)</td><td>Circuit Court of</td></tr>
<tr><td>(The People of the State of Illinois,</td><td>)</td><td>Randolph County.</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Petitioner-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>No. 07-MH-192</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Phillip E.,</td><td>)</td><td>Honorable</td></tr>
<tr><td></td><td>)</td><td>William A. Schuwerk, Jr.,</td></tr>
<tr><td>Respondent-Appellant).</td><td>)</td><td>Judge, presiding.</td></tr>
</table>

**Opinion Filed**: September 5, 2008

**Justices**: Honorable Melissa A. Chapman, J.

Honorable Richard P. Goldenhersh, J., and
Honorable James M. Wexstten, J.,
Concur

**Attorneys for Appellant**
Barbara A. Goeben, Staff Attorney, Veronique Baker, Director, Legal Advocacy Service, Guardianship and Advocacy Commission, Metro East Regional Office, 4500 College Avenue, Suite 100, Alton, IL 62002

**Attorneys for Appellee**
Hon. Darrell Williamson, Randolph County State's Attorney, Randolph County Courthouse, Chester, IL 62233; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Sharon Shanahan, Contract Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864